[Civ. No. 8029. First Appellate District, Division Two.—March 16, 1932.]

DORIS ISABEL WALLDEN, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

648

Wm. M. Abbott, K. W. Cannon, Cyril Appel and Ivores R. Dains for Appellants.

James F. Brennan and Kilpatrick & Goodman for Respondent.

STURTEVANT, J.—From a judgment awarding the plaintiff damages in the sum of $7,500 for injuries sustained in a street-car accident the defendants have appealed. They contend (1) the verdict and judgment are excessive and wholly unsupported by the evidence; (2) counsel for plain-

tiff was guilty of prejudicial misconduct in his argument to the jury; (3) the court erred in its instructions to the jury; and (4) the court erred in refusing to charge the jury as requested. As a foreword they contend that the amount of the verdict when weighed with the injuries actually sustained demonstrates the prejudicial character of the errors of which they complain.

There was evidence that the plaintiff's injury was slight, if any; that after the accident the corporate defendant furnished her all necessary medical care in a reputable hospital at its expense and that in a short time the plaintiff had made practically a complete recovery—in other words, that the plaintiff's damages, if any, were negligible. In this connection it should be stated that there was evidence that prior to the accident the plaintiff had suffered from, and at the time of the accident she was suffering from, generalized osteo-arthritis. On the other hand there was evidence that prior to the accident the plaintiff was in good health, but from the moment of the accident she suffered severe pains in her back; that, at the expense of the corporate defendant, she was a patient in St. Francis Hospital for five weeks; that she was then taken to Fabiola Hospital in an ambulance and remained at that hospital eight or nine days; that she was then taken home, where she remained four weeks; that she then went to the Berkeley General Hospital, where she remained for seventy-three days and was then taken home. She testified that the pain continued the same from the day of the accident until the date of the trial. One witness testified the plaintiff suffered a sprain in the lumbo-sacro region and the injury was permanent. A nurse testified that down to the date of the trial the plaintiff sat in a chair or walked with two crutches. In connection with these matters the plaintiff showed that after leaving St. Francis Hospital she incurred expenses in medical treatment amounting to nearly $1,000. Under these circumstances there was a conflict in the evidence which the jury determined in the plaintiff's favor. That determination may not be disturbed by a court of review. If the jury believed the theory presented by the plaintiff, and from its verdict we must assume it did, then the award was not excessive.

The plaintiff took the depositions of the conductor and of the motorman and read them in evidence. Neither party

called as a witness either the conductor or the motorman. The defendants showed that at the time of the tr' .l Mr. Nagel, the conductor, was and for four months had been down in Fresno County. When the arguments were being made the following took place:

"Mr. Goodman: . . . As far as that is concerned, it (charity) was on the part of the Market Street Railway performed merely and only because they knew that they were legally responsible for this accident; they knew from their own investigation and from their own men that they were liable for the damages in this case, and so, already knowing it, they decide to get this woman into a hospital, where they can put their own physicians on the case; where they might be able to keep her there so that they might be able to suppress her claims with men favorable to themselves when the day of reckoning might come; so that he might have her there perhaps long enough until the astute and capable legal department might get in touch with her and probably make a— Mr. Appel: . . . There is no evidence in reference to any of those matters. The Court: . . . The portion of counsel's speech referring to the legal department is eliminated and that is understood. Mr. Goodman: . . . With all the people who were on the street car that day, I would like to know from Mr. Nagel, if he were here, how many of those cards he passed out, and how many of them he got back, and how many people there were that he knew that actually were witnesses to this accident that may have been called here. I don't know whether more people returned it or not; but I would like to know, and I would like to have asked Mr. Nagel if he knew who that man was that got up and got off of the car and caught this woman's head before it hit the pavement. Mr. Appel: Mr. Goodman, you had the opportunity of asking those questions when you personally took Mr. Nagel's deposition, and you didn't do it. Mr. Goodman: You wouldn't have let me ask them, counsel. Mr. Appel: Oh, yes, I would. · The Court: I think counsel has a right to continue without interruption. He is within his rights. Mr. Appel: Yes, but if they violate the true facts of the case, your honor, I have a right, even in view of what your honor said, to call it to the attention of the jury. The Court: He has a right to make any deduction

within reason he chooses to make. Mr. Appel: Pardon me for taking exception to your honor's remarks, but a deduction is one thing, your honor, and a fact is another, and if he is talking facts let him stick to the facts. Deductions are other things, your honor. The Court: He can draw his conclusion from his own standpoint: Mr. Appel: But he is talking facts. Mr. Goodman: That is what is bothering him. I am talking facts. The Court: I like to have each counsel make his remarks to the jury, and he can draw his own deductions or give his own conclusions, and, of course, the jury will listen to it all and decide the case after they have heard everything."

The defendants claim the foregoing presents prejudicial misconduct. The defendants state, "It must surely be the law that one whose instrumentalities have occasioned injury to another may voluntarily extend medical assistance without such circumstances being deemed an admission of liability." Conceding without deciding the point, then it would seem to be a two-sided matter and both sides should remain silent. But the plaintiff asserts that in his argument to the jury the attorney for the defendants claimed that the corporate defendant was but doing an act of charity when it furnished free hospitalization to the plaintiff. Continuing, she asserts that her attorney had the right to reply. We think he did and, as the trial court ruled, that he was within his rights.

As to cards signed for and returned to the conductor, the plaintiff took the conductor's deposition. If she wanted to know anything about those cards she should have asked her questions then. But she says that if she had made the attempt the defendants would have stopped her by an objection. As she did neither, there was no record on which to base an argument which assumed the existence of some witness cards which, perhaps, do not exist. But there was no such objection made by the defendants. If, for the purposes of this case, we assume that counsel's argument constituted error, the point is not properly before us on appeal. Before the point could be presented to a court of review the defendants were bound to present the same point to the trial court in clear language and ask for a ruling. Failing to do so, they may not complain on appeal. In *Olsen* v. *Standard*

*Oil Co.,* 188 Cal. 20, at page 26 [204 Pac. 393, 396], the court said: "Defendant's attorneys objected to the remarks but did not ask the court to instruct the jury to disregard them. This, of itself, is a sufficient answer to the point."

In her complaint the plaintiff alleged the injuries she claimed she suffered in falling and she alleged the damages she sustained and of which she complained. When instructing the jury the trial court gave an instruction which is very long and which enumerates what are the elements of damage that may legally be considered by the jury. The defendants claimed that the instruction was so worded that the jury was told the plaintiff could recover damages for the chronic osteo-arthritis from which, as they claimed, she had suffered prior to the accident. The point may not be sustained. In her complaint she had not "complained" of injury from osteo-arthritis. But the instruction limits the award to " . . . *damages, if any, sustained and complained of*". The plaintiff's claim was thus limited by the wording of her complaint.

When the deposition of the motorman was taken he was asked: "Q. On the street car you were operating that day, is there on the right front corner what is called a rear view mirror? A. No, there isn't any." At no other place in the record does the word "mirror" appear. Later the deposition was read in evidence by the plaintiff. No objection was made at any time to the question or answer. One of the instructions given by the trial court was as follows: "If you find that plaintiff was a passenger, then I instruct you that a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." The defendants now assert that the instruction was in effect a statement by the court to the effect that the corporate defendant was negligent because it did not have its car equipped with a rear view mirror. It will be observed that the instruction does not mention mirrors directly or, necessarily, indirectly. Error must be made to appear affirmatively. A court of review will not lightly infer error. The instruction was sound law. (Civ. Code, sec. 2100.) If defendants wanted the jury advised that the corporate defendant was under no

duty to install rear view mirrors they should have asked for an instruction to that effect.

■ The defendants asked and the trial court refused to give an instruction that if the proof was as consistent with neglect of the plaintiff as with neglect of the defendants the plaintiff could not recover. As shown by this record the refusal was not error. In instruction XXXVI the court instructed the jury in proper form that the plaintiff could not recover if she was guilty of slight contributory negligence. Then in instruction XXXVII the court instructed the jury that if the plaintiff was guilty of contributory negligence she could not recover no matter how negligent the defendants were. The rule as stated in those two instructions was more favorable to the defendants than the rule as stated in the instruction which was refused.

■ The defendants requested and the trial court refused an instruction that there are no degrees of negligence or contributory negligence in this state. We think it cannot be said that the subject matter was not covered by instructions XXXVI and XXXVII. Moreover, instruction XLVIII stated, ''The issue involved in this case is not what degree of care the Market Street Railway Company or its employees owed to the plaintiff, Mrs. Doris Isabel Wallden, or what degree of care Mrs. Wallden exercised for her own safety. . . . '' These three instructions fully protected the rights of the defendants on the subjects of degrees of care and degrees of negligence.

■ The defendants asked and the trial court refused an instruction that a car need not be kept waiting because someone manifests his intention to become a passenger. It assumes facts not in evidence—that the plaintiff stood on the sidewalk, signaled the car, and that the car did not wait, but went off and left her. Whereas, it was the claim of the plaintiff that the car came to a stop, that she attempted to board it, that while she was partly but not entirely on board the car was started. If such was the fact, it will not be claimed that the car was, under those circumstances, under no duty to ''wait''. (See instruction XXX.)

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 15, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 12, 1932.